IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RONNIE D. FLYNN                                                                                PLAINTIFF

v.                      Civil No. 11-2027

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                          DEFENDANT

**MEMORANDUM OPINION**

I.       **Factual and Procedural Background**

Plaintiff, Ronnie D. Flynn, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

Plaintiff protectively filed his DIB and SSI applications on July 6, 2006, alleging disability as of November 14, 2005, due to degenerative disc disease, back and neck pain, difficulty sleeping, and depression. Tr. 43, 107. On the alleged onset date, Plaintiff was forty three years old with a ninth grade education. Tr. 7, 51, 112, 218. He has past relevant work as an upholsterer. Tr. 50, 108-109, 123-130, 152.

Plaintiff's application was denied at the initial and reconsideration levels. Tr. 53-55, 58-61. At Plaintiff's request, an administrative hearing was held on June 4, 2008. Tr. 4-30. Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable decision on October 16, 2008, finding Plaintiff was not disabled within the meaning of the Act. Tr. 40-52. Subsequently, the Appeals Council denied Plaintiff's Request for Review on December 13, 2010,

thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Plaintiff now seeks judicial review of that decision.

II.     **Medical History**

On January 17, 2005, Plaintiff presented to St. Edward Mercy Medical Center ("St. Edward's") with complaints of back and leg pain that began after he lifted a washing machine. Tr. 166-167. A CT of Plaintiff's lumbar spine revealed multilevel mild disc bulging, a probable small right foraminal disc protrusion at L4-5, and some very mild asymmetric prominence of disc material into the right foramen at L2-3. Tr. 166, 173-174. Plaintiff was assessed with lumbar strain with radiation down the left leg and given prescriptions for steroid medication, pain medication, and a muscle relaxer. Tr. 166. On November 7, 2005, Plaintiff complained of right neck and shoulder pain. Tr. 168-169. A CT of Plaintiff's cervical spine revealed spondylitic ridging, a central/right paracentral disc bulge, a probable herniated disc at C5-6 with mild to moderate spinal canal stenosis, and mild spurring and disc bulges at C4-5 and C6-7. Tr. 168, 170, 172. Plaintiff was given prescriptions for pain medication and referred to a neurosurgeon. Tr. 168.

On November 9, 2005, Plaintiff had an MRI of his cervical spine performed. Tr. 175-176. Results revealed mild to moderate canal stenosis at C5-6 secondary to broad spondylitic ridge formation eccentric to the right, mild disc abnormalities at C3-4, C4-5, and C6-7, and asymmetry to the right side of C6-7 with some foraminal compromise. Tr. 175. An MRI of Plaintiff's lumbar spine, dated January 11, 2006, revealed a mild disc bulge at L4-5 and a small central disc bulge at L5-S1. Tr. 178. No focal disc herniations were appreciated. Tr. 178.

In November 2005, Plaintiff began treatment at River Valley Musculoskeletal Center, for back and neck pain and upper extremity numbness and weakness. Tr. 179-203. Plaintiff had normal

strength, reflexes, and sensation. Tr. 185. A Spurling's test was positive to the right. Tr. 185. He was able to ambulate without deficit in his gait and had no trouble walking heel-to-toe. Tr. 185. X-ray imaging confirmed degenerative disc disease at C5-6. Tr. 188, 188. Plaintiff was assessed with cervical degenerative disc disease with an osteophyte and posterior disc bulge at C5/6. Tr. 186. He was prescribed Hydrocodone, Robaxin, and a Medrol Dose pack. Tr. 186.

On January 5, 2006, Plaintiff returned to the clinic and was given prescriptions for Lyrica and Lorcet Plus. Tr. 184. Arthur M. Johnson, M.D., ordered an MRI of the lumbar spine and cervical traction therapy. Tr. 184. MRI results revealed generalized degenerative changes at L4-5. Tr. 182. Plaintiff began cervical traction therapy and cervical and lumbar strengthening exercises. Tr. 183. Dr. Johnson instructed Plaintiff to remain off work and avoid heavy lifting, bending, or strenuous activity. Tr. 183.

On February 28, 2006, Plaintiff stated he had not improved with cervical traction. Tr. 181. He also stated he had recently been laid off from his job due to his inability to lift. Tr. 181. Robaxin and Aleve were added to Plaintiff's medications due his complaints of pain radiating into his left arm. Tr. 181. Plaintiff began receiving cervical epidural steroid injections and lumbar traction in addition to cervical traction and physical therapy. Tr. 181, 191, 194, 200.

At a follow-up appointment on March 22, 2006, Plaintiff complained of left elbow, low back, shoulder, and hip pain. Tr. 179-180. Physical examination was within normal limits, except for a positive elbow flexion test and positive Tinel sign over the cubital tunnel. Tr. 179. X-rays of Plaintiff's hips were unremarkable with the exception of some mild degenerative change. Tr. 180, 187. Edward W. Rhomberg, M.D., suspected that Plaintiff's primary pain at the base of the neck with radiation to the shoulder was due to cervical spondylosis and his right buttock pain was related

to lumbar spondylosis. Tr. 180. He suspected no hip or shoulder pathology, but did suspect cubital tunnel syndrome on the left. Tr. 180.

On February 28, 2008, Plaintiff saw Ted Honghiran, M.D., for a consultative orthopaedic evaluation. Tr. 218-227. Plaintiff related a history of back and neck pain beginning in 2005 and 2006, respectively. Tr. 218. He stated his back pain began when he injured himself loading a refrigerator at work. Tr. 218. On examination, Plaintiff had normal gait and was able to walk on his heels and toes without difficulty. Tr. 218. He had good range of motion in the lumbar spine. Tr. 218, 221. He had normal reflexes and sensation in all extremities and a negative straight leg raise in both legs. Tr. 218. Range of motion in Plaintiff's cervical spine was good, although he was limited to 60 degrees on rotation and 30 degrees on extension. Tr. 218, 221. No acute muscle spasms or atrophy were noted. Tr. 218. Dr. Honghiran diagnosed Plaintiff with degenerative disc disease at L4-5 and C5-6 and gave a fair prognosis. Tr. 219. He stated Plaintiff could perform some type of work, but would have difficulty doing heavy lifting more than thirty pounds. Tr. 219, 227.

In a Medical Source Statement ("MSS"), Dr. Honghiran determined Plaintiff could frequently lift/carry up to twenty pounds and occasionally lift/carry up to fifty pounds. Tr. 222-227. He determined Plaintiff could sit for two hours without interruption and four hours total, stand for one hour without interruption and two hours total, and walk one hour without interruption and two hours total. Tr. 223. Dr. Honghiran found Plaintiff could frequently reach, handle, finger, feel, and push/pull with both hands and frequently operate foot controls with both feet. Tr. 224. Posturally, he determined Plaintiff could frequently climb stairs/ramps and ladders/scaffolds, balance, stoop, kneel, crouch, and crawl. Tr. 225. He found Plaintiff could frequently be exposed to humidity and wetness, dusts, odors, fumes, pulmonary irritants, extreme heat/cold, vibrations, and loud noise, and

could frequently move mechanical parts or operate a motor vehicle, but could only occasionally be exposed to unprotected heights.  Tr. 226.

On February 20, 2007, Plaintiff saw Steve Carney, M.D., with complaints of headaches, neck pain, and numbness and tingling in his extremities.  Tr. 248.  On examination, Dr. Carney noted some numbness and tingling in Plaintiff's left arm and into the right leg and knee as well as limited range of motion in his lower extremities.  Tr. 248.  Dr. Carney assessed Plaintiff with cervical disc disease and headaches, and prescribed Darvocet and Robaxin.  Tr. 248.  He also noted Plaintiff should see a neurosurgeon.  Tr. 248.

From May 2007 through April 2008, Plaintiff received treatment at Good Samaritan Clinic for neck and back pain and numbness in his right leg and left arm.  Tr. 228-247.  He was prescribed Ultram, Naproxen, Arthrotec, and a Medrol Dose pack.  Tr. 235.  In June 2007, Plaintiff stated he was doing a little better, but was still in pain.  Tr. 234.  In July 2007, Plaintiff stated he was "holding his own" and was able to attend to his activities of daily living.  Tr. 232.  In October 2007, Plaintiff complained of continual back pain and stated he was unable to "get around very good" and had trouble sleeping.  Tr. 230.

On July 16, 2008, Plaintiff saw Patricia J. Walz, Ph.D., for a consultative mental evaluation. Tr. 249-257.  Plaintiff reported feeling worthless due to his back condition, but denied depression. Tr. 249-250.  He reported a history of special education in reading.  Tr. 250.  At the time of the interview, Plaintiff was taking Lipitor, Tramadol, and Naproxen.  Tr. 251.

On examination, Plaintiff's mood and affect were sad.  Tr. 252.  Thoughts processes were logical and goal-oriented and thought content was notable for death wish but no suicidal ideation. Tr. 252.  Plaintiff's intelligence was estimated to lie within the borderline range.  Tr. 253.  Dr. Walz

diagnosed Plaintiff with depression related to a medical condition, alcohol dependence in remission, and borderline intellectual functioning. Tr. 253. She estimated his Global Assessment of Functioning ("GAF") score at 45-50. Tr. 253. Dr. Walz noted that Plaintiff's social skills were slightly impaired and his vocabulary was quite limited. Tr. 253. She found that Plaintiff would have difficulty with very complex tasks. Tr. 254. Attention and concentration were notable for the ability to do four digits forward and three backward. Tr. 254. Persistence was adequate, but Plaintiff did not always do well on tasks and worked slowly. Tr. 254.

In a MSS, Dr. Walz found moderate limitations in Plaintiff's ability to make judgments on simple work-related decisions, understand, remember, and carry out complex instructions and make judgments on complex work-related decisions, interact appropriately with the public, supervisors, and coworkers, and respond appropriately to usual work situations and to changes in routine. Tr. 255-256. She found mild limitations in Plaintiff's ability to understand, remember, and carry out simple instructions. Tr. 255. Dr. Walz noted poor frustration tolerance and social avoidance. Tr. 256.

On July 23, 2007, Plaintiff saw Stan Reyenga, M.D., for a consultative physical examination. Tr. 258-269. On examination, Plaintiff had normal passive range of motion in all extremities. Tr. 260. Range of motion in Plaintiff's cervical spine was limited from 60 degrees to 50 degrees on extension and 80 degrees to 75 degrees on rotation. Tr. 260. Range of motion in Plaintiff's lumbar spine was slightly limited from 90 degrees to 80 degrees. Tr. 260. Straight-leg raising was positive on the left. Tr. 261. Dr. Reyenga noted no muscle weakness or atrophy, and gait and coordination were normal. Tr. 261. Plaintiff was able to stand/walk without assistive devices, walk on his heels and toes, and squat/arise from a squatting position. Tr. 261. Dr. Reyenga diagnosed Plaintiff with

cervical disc disease, lumbar disc disease, nicotine addition, and hyperlipidemia. Tr. 262.

In a MSS, Dr. Reyenga found that Plaintiff could frequently lift/carry up to ten pounds and occasionally lift/carry up to twenty pounds. Tr. 264. He found Plaintiff could sit for two hours without interruption and eight hours total, stand for two hours without interruption and six hours total, and walk for four hours without interruption and four hours total. Tr. 265. Dr. Reyenga determined Plaintiff could frequently handle, finger, and feel, and occasionally reach and push/pull. Tr. 266. He found Plaintiff could frequently operate foot controls. Tr. 266. Posturally, Dr. Reyenga determined Plaintiff could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl, and never climb ladders or scaffolds. Tr. 267. He found Plaintiff could frequently be exposed to humidity and wetness, dusts, odors, fumes, pulmonary irritants, extreme heat/cold, vibrations, and loud noise, frequently operate a motor vehicle, occasionally move mechanical parts, and never work at unprotected heights. Tr. 268.

### III. Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions

represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

**IV.** **Discussion**

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since November 14, 2005, the alleged onset date. Tr. 45. However, he noted Plaintiff received unemployment benefits through the third quarter of 2006. Tr. 45. At step two, the ALJ found Plaintiff suffers from back disorder (degenerative disc disease) and mood disorder, both of

which were considered severe impairments under the Act. Tr. 45. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 46-47.

At step four, the ALJ found Plaintiff had the RFC to perform light work, except that he could frequently lift/carry ten pounds, occasionally lift/carry twenty pounds, sit for a total of four hours in an eight-hour workday and sit continuously for two hours, stand/walk for a total of four hours in an eight-hour workday and stand/walk continuously for one hour, occasionally work at unprotected heights, frequently reach, handle, finger, feel, climb, balance, stoop, kneel, crouch, crawl, and operate hand and foot controls. Tr. 47-50. Mentally, he determined Plaintiff had moderate limitation in the ability to make judgments on simple work-related decisions, understand, remember, and carry out complex instructions, interact appropriately with supervisors, the public, and coworkers, and respond appropriately to usual work situations and routine work changes.[1] Tr. 47-50.

Based on these limitations, the ALJ determined Plaintiff was unable to perform his past relevant work. Tr. 50-51. However, after receiving vocational expert testimony, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[2] Tr. 51-52. Accordingly, the ALJ determined Plaintiff was not under a disability from November 14, 2005, the alleged onset date, through October 16, 2008, the date of the decision. Tr. 52.

---

[1] "Moderately limited" means there is more than a slight limitation but the claimant can still perform in a satisfactory manner. Tr. 47.

[2] The ALJ determined Plaintiff could perform the requirements of representative occupations such as assemblers, of which there are 1000 jobs regionally and 52,000 jobs nationally, inspectors, of which there are 1100 jobs regionally and 65,000 jobs nationally, and sorters and weighers, of which there are 900 jobs regionally and 51,000 jobs nationally. Tr. 52.

On appeal, Plaintiff contends the ALJ erred by: (1) failing to consider his impairments in combination; (2) improperly dismissing his subjective complaints; (3) improperly determining his RFC; and (4) failing to fully develop the record. *See* Pl.'s Br. 14-20. For reasons discussed below, the court finds Plaintiff's arguments have no merit.

A. Combined Impairments

Plaintiff contends the ALJ failed to consider his combined impairments, including his complaints of hip, shoulder, and neck pain, upper and lower extremity numbness and tingling, headaches, fatigue, difficulty sleeping, and borderline intellectual functioning. *See* Pl.'s Br. 15. The ALJ thoroughly discussed Plaintiff's medical history and specifically stated that he considered Plaintiff's "combination of impairments." *See Harris v. Apfel*, 198 F.3d 250 (8th Cir. 1999) (citing *Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) ("claimant's conclusory statement that ALJ failed to consider combined effects of impairments was unfounded where ALJ noted each impairment and concluded that impairments alone or in combination were not of listing level")). Accordingly, substantial evidence supports the ALJ's analysis of Plaintiff's combined impairments.

B. Subjective Complaints

Plaintiff alleges the ALJ improperly dismissed his subjective complaints. *See* Pl.'s Br. 15-20. When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir.

2009) (quoting *Goff*, 421 F.3d at 792). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.* A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)). Contrary to Plaintiff's assertion, the ALJ properly considered his subjective complaints and dismissed them for legally sufficient reasons. With regard to activities of daily living, the ALJ noted that Plaintiff is able to take care of his personal needs, drive his children to school, take care of his two year old son during the day, attend church, shop for groceries, prepare simple meals, and perform household chores such as vacuuming, sweeping, laundry, and dishes. Tr. 26, 46, 115, 118-119; *Halverson v. Astrue*, 600 F.3d 922, 928 (8th Cir. 2010) (claimant's allegations of employment-related difficulties were inconsistent with her ability to travel, visit friends, go shopping, and care for her activities of daily living). The ALJ also noted that many exacerbations of Plaintiff's back and neck pain were caused by overexertion, such as moving heavy equipment or pushing a vehicle without assistance. Tr. 50, 194, 198, 235. The medical evidence of record also documents periods of noncompliance with physical therapy. Tr. 184, 191; *see Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001) (noncompliance with medical treatment).

Although the undersigned does not fully agree with the ALJ's conclusion that Plaintiff's back pain substantially improved with treatment, the ALJ nevertheless considered the appropriate factors and cited valid reasons for discounting Plaintiff's subjective complaints. *Gates v. Astrue*, 627 F.3d

1080, 1082 (8th Cir. 2010) ("we defer to an ALJ's credibility determinations if they are supported by valid reasons and substantial evidence"). Accordingly, substantial evidence supports the ALJ's credibility analysis.

    C. RFC Assessment

Plaintiff contends the ALJ's RFC assessment did not properly reflect his mental and physical limitations. *See* Pl.'s Br. 15-20. At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

    1. Mental Impairments

Plaintiff argues the ALJ failed to properly consider his diagnosis of borderline intellectual functioning. *See* Pl.'s Br. 19-20. The ALJ was not obligated to consider the diagnosis of borderline intellectual functioning, as Plaintiff did not allege this impairment in his initial applications or at the administrative hearing. *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (ALJ is not obliged to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability). Despite this fact, the ALJ expressly adopted Dr. Walz's MSS

findings and therefore *implicitly* incorporated any limitations resulting from her diagnosis of borderline intellectual functioning. As such, Plaintiff's argument is unpersuasive.

Plaintiff also argues the ALJ failed to consider and adopt Dr. Walz's GAF findings. *See* Pl.'s Br. 18. GAF scores cover only a snapshot in time and are very subjective in nature. *See Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010). Moreover, the Commissioner has declined to endorse the GAF scale to evaluate disability claims because the scales do not have any direct correlation to the severity requirements in mental disorders listings. *Jones*, 619 F.3d at 974, fnt. 4 (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000). Thus, while the GAF system provides insight into a claimant's overall level of functioning, it is by no means dispositive on the issue of disability and must be considered in conjunction with other medical evidence. Here, the ALJ considered the medical evidence of record, including Plaintiff's GAF score, but determined he was capable of employment. Substantial evidence supports this determination.

    2. Physical Impairments

Plaintiff also alleges the ALJ failed to consider his testimony regarding hip pain, shoulder pain, neck pain, upper and lower extremity numbness, headaches, and fatigue. *See* Pl.'s Br. 15-18. To the contrary, the ALJ thoroughly discussed Plaintiff's medical history and physical complaints. Tr. 47-50. Many of these complaints stem from Plaintiff's diagnosis of cervical and lumbar degenerative disc disease and were appropriately addressed by the ALJ's RFC assessment. Furthermore, both Drs. Honghiran and Reyenga completed MSS statements in which they found Plaintiff capable of some types of work. *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (consulting physician's RFC assessment supported the ALJ's RFC finding when none of the claimant's treating physicians opined that she was unable to work). For these reasons, the court finds

that substantial evidence supports the ALJ's RFC determination.

### D. Development of the Record

Finally, Plaintiff argues the ALJ erred by not completing a Psychiatric Review Technique Form ("PRTF") or mental RFC checklist. *See* Pl.'s Br. 19-20. The ALJ has a duty to fully and fairly develop the record, even if a claimant is represented by counsel. *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). "It is well-settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician." *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000). While the Secretary is under no duty to go to inordinate lengths to develop a claimant's case, he must "make an investigation that is not wholly inadequate under the circumstances." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)). There is no bright-line test for determining when the Secretary has failed to adequately develop the record; the determination must be made on a case by case basis. *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health & Human Serv.,* 708 F.2d 1048, 1052 (6th Cir.1983)).

Under the circumstances of this case, the ALJ fulfilled his duty to fully and fairly develop the record. The court is cognizant of the fact that there is no PRTF in the administrative record. 20 C.F.R. §§ 404.1520a, 416.920a. In *Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007), the Eighth Circuit held that a PRTF must be completed at all levels of the application process. However, the court also acknowledged that a written form was not required at the ALJ and Appeals Council levels so long as the analysis was included in the written decision. *Id.* In *Nicola*, there was no evidence that a PRTF was completed during the initial development stages, *nor* was there analysis included

in the ALJ's decision. *Id.* Here, unlike the circumstances in *Nicola*, the ALJ specifically discussed Plaintiff's mental impairments and their impact on the four broad functional areas: activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation. Tr. 46-47; 20 C.F.R. §§ 404.1520a, 416.920a. Moreover, the ALJ sent Plaintiff for a consultative mental evaluation and essentially adopted Dr. Walz's MSS findings in his RFC determination. Tr. 249-257. For these reasons, the court finds that the ALJ's failure to complete a PRTF form was harmless error.

The ALJ had sufficient evidence to rely on in making his RFC determination. *See Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005) (rejecting argument that ALJ failed to fully and fairly develop the record where there was no indication that the ALJ was unable to make RFC assessment). Moreover, Plaintiff has demonstrated no prejudice or injustice as a result of this alleged failure to develop the record. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (unfairness or prejudice is necessary for a reversal due to failure to develop the record). Accordingly, the undersigned finds that the ALJ satisfied his duty to fully develop the record.

**V.     Conclusion**

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed. Accordingly, Plaintiff's complaint should be dismissed with prejudice.

IT IS SO ORDERED this 18th day of January 2012.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE